**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 4, 2023

Edward B. Micheletti
Lauren N. Rosenello
Skadden, Arps, Slate, Meagher & Flom LLP
920 N. King Street, 7th Floor
Wilmington, DE 19899

Lora Kolodny
CNBC
1 Market Street
San Francisco, CA 94105

Re:    *Twitter, Inc. v. Elon R. Musk et al.*,
       C.A. No. 2022-0613-KSJM

Dear Counsel:

This letter resolves the Musk Parties' Motion for Continued Confidential Treatment.[1]

"Under the First Amendment of the United States Constitution and as a matter of common law, the public has a presumptive right of access to judicial records."[2]  The public's right of access to court documents and proceedings "is considered fundamental to a democratic state and necessary in the long run so that the public can judge the product of the courts in a given case."[3]

---

[1] C.A. No. 2022-0613-KSJM, Docket ("Dkt.") 752.  The Musk Parties are: Elon R. Musk, X Holdings I, Inc. and X Holdings II, Inc.

[2] *In re Appraisal of Columbia Pipeline Gp., Inc.*, 2018 WL 4182207, at *1 (Del. Ch. Aug. 30, 2018).

[3] *Al Jazeera Am., LLC v. AT & T Servs., Inc.*, 2013 WL 5614284, at *3 (Del. Ch. Oct. 14, 2013) (internal quotation marks omitted).

Court of Chancery Rule 5.1 "reflects the Court of Chancery's commitment to these principles."[4] Rule 5.1(a) provides, "[e]xcept as otherwise provided in this Rule, proceedings in a civil action are a matter of public record."[5] "Rule 5.1 makes clear that most information presented to the Court should be made available to the public."[6]

To protect information in court filings from public view, a person or party must demonstrate "good cause."[7] For purposes of Rule 5.1, "good cause" exists "only if the public interest in access to Court proceedings is outweighed by the harm that public disclosure of sensitive, non-public information would cause."[8] "The party or person seeking to obtain or maintain Confidential Treatment always bears the burden of establishing good cause for Confidential Treatment."[9]

The Musk Parties seek continued confidential treatment of sensitive personal information, such as email addresses and cell phone numbers. The court routinely permits the confidential treatment of such information, and for good reason.[10] Although personal

---

[4] *Horres v. Chick-fil-A, Inc.*, 2013 WL 1223605, at *2 (Del. Ch. Mar. 27, 2013).

[5] Ct. Ch. R. 5.1(a).

[6] *Al Jazeera*, 2013 WL 5614284, at *3 (emphasis and internal quotation marks omitted).

[7] Ct. Ch. R. 5.1(b)(1).

[8] Ct. Ch. R. 5.1(b)(2).

[9] Ct. Ch. R. 5.1(b)(3).

[10] *See, e.g.*, *Mountain W. Series of Lockton Cos. v. Alliant Ins. Servs., Inc.*, C.A. No. 2019-0226-JTL, at 12 (Del. Ch. July 14, 2022) (ORDER) (granting request to maintain confidential treatment redactions for "personal email addresses" and "cell phone numbers," finding that this information "satisf[ies] the requirements for confidential treatment" and "[t]he court did not rely on that specific information in deciding the case"); *GKC Strategic*

contact information can—and typically, must—be revealed to facilitate discovery, such information rarely informs the substance of the parties' dispute. Accordingly, the continued confidential treatment of such information will "not greatly disadvantage the public's ability to understand the nature of the dispute before this Court."[11]

A reporter for CNBC and NBC News, Lora Kolodny, opposes the Musk Parties' motion.[12] She argues that the Musk Parties lack a legal basis for redacting the identified categories of personal information, but I have already rejected that argument. As discussed above, the public does not have a right to a litigant or non-party's personal phone number or email address, and the court routinely permits the confidential treatment of such information.

---

*Value Master Fund, LP v. Cap. Bank Fin. Corp.*, C.A. No. 2018-0226-KSJM, at 7 (Del. Ch. Aug. 22, 2019) (ORDER) (granting request to maintain confidential treatment redactions "of the personal cell phone numbers" contained within exhibits); *Crowhorn v. Nationwide Mut. Ins. Co.*, 2002 WL 1767529, at *10 (Del. Super. Ct. July 10, 2002) (granting protective order and permitting the redaction of "the names, addresses, phone numbers, and the like which would provide the identity of putative plaintiffs").

[11] *Al Jazeera*, 2013 WL 5614284, at *7; *see also In re Oxbow Carbon LLC Unitholder Litig.*, 2016 WL 7323443, at *4 (Del. Ch. Dec. 15, 2016) (ORDER) ("The 'discrete' nature of the information is such that its redaction would not hinder the public's ability to understand[] the nature of the claims that the parties assert.").

[12] Ms. Kolodny originally emailed her opposition to me personally, which was highly problematic for many reasons. For starters, as should be obvious, my inbox could not withstand such a practice were it widely adopted. As important, the court has established filing procedures to ensure the orderly administration of justice, and nowhere do the Court of Chancery Rules provide that emailing the assigned judge is an acceptable way to submit anything to the court, including a Rule 5.1 challenge. Even more important is the fact that, for public access to have any meaning, a person seeking court action in a pending case must file their request on the public record of the case—the docket. This requirement holds equally for self-represented filers. There is no exception for members of the media.

She also argues that the motion was untimely under Rule 5.1, but that is not quite accurate. When Ms. Kolodny noticed her challenge under Rule 5.1 on December 22, 2022, the case was on appeal, so the defendants' efforts to file an opposition were rejected from the docket.[13] The Supreme Court later issued its mandate closing the appellate case on June 23, 2023, and the Musk Parties filed their motion within five days thereafter, on June 26, 2023.[14] Under the unique circumstances of this case, the Musk Parties acted timely.

Last, Ms. Kolodny argues that the redactions are over-inclusive, and this point has some merit. She speculates that the Musk Parties redacted more than just phone numbers and email addresses, pointing to portions of the redactions to challenged Exhibit H as an example.[15] But I have reviewed Exhibit H, and the redacted text is all personal contact information, just as the Musk Parties represent. That said, at least portions of the challenged Exhibit C seem to redact not only personal contact information, but also individual names.[16] Not all these names are complete; some only involve first or last names or initials.[17] But even so, redacting these names goes too far. Counsel is instructed to re-

---

[13] *See* Dkt. 747.

[14] Dkts. 751–52.

[15] *Compare* Dkt. 399, Ex. H, *with* Dkt. 654.

[16] *See* Dkt. 399, Ex. C.

[17] *See, e.g.*, Dkt. 399, Ex. C. at 31 (providing a single name and an email address for person number 549, and providing a first name, last initial, and email address for person number 553).

review the proposed redactions to ensure that the public filings redact only personal contact

information and not names.[18]

Subject to the instructions set out in this letter, the Musk Parties' motion is granted.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:     All counsel of record (by *File & ServeXpress*)

---

[18] For the avoidance of doubt, where a redacted name is accompanied by a redacted email address, counsel need not un-redact the corresponding email address.